IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONNELLY J. LE BLANC,

                    Petitioner,

        v.                                          CIVIL ACTION
                                                    NO. 16-1044
ERIC TICE, et al.,

                    Respondents.

## Opinion

**Slomsky, J.**                                     **December 9, 2016**

## I.   INTRODUCTION

Before the Court is Donnelly J. Le Blanc's ("Petitioner") pro se Petition for Writ of Habeas Corpus. Petitioner is a state prisoner housed at the State Correctional Institution in Huntingdon, Pennsylvania.  Petitioner files the instant petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)

On July 28, 2016, Magistrate Judge Jacob P. Hart issued a Report and Recommendation recommending that the Petition be dismissed.  (Doc. No. 21 at 18.)  On August 17, 2016, Petitioner filed Objections to [the] Report and Recommendation.  (Doc. No. 25.)  On September 8, 2016, Petitioner filed an Amplification and Clarification of [his] Objections.   (Doc. No. 27.) The Court has reviewed all pertinent documents and for the reasons that follow, it will adopt the Report and Recommendation denying the Petition.

## II.   BACKGROUND

### A.  Factual History

The Pennsylvania Superior Court summarized the facts underlying this Petition as follows:

[Petitioner] was convicted of two counts each of involuntary deviate sexual intercourse, aggravated indecent assault where the complainant was under the age of sixteen, and corruption of minors based upon the testimony of his stepson, K.M. While the victim's mother was working at night, [Petitioner] performed oral sex on the victim, and K.M. performed oral sex on Appellant. [Petitioner] also penetrated the victim's anus with his finger. [Petitioner] also made K.M. use a homemade masturbation device. After K.M. told his mother about the abuse, she contacted police, who arrived at the home and confiscated the homemade masturbation device.

Commonwealth v. LeBlanc, No. 2127 MDA 2014 (Pa. Super. Ct. Sep. 2, 2015); (Doc. No. 17, Ex. K at 1.)

### B. Procedural History

In July 2009, following his conviction in the Court of Common Pleas for Lancaster County, Petitioner was sentenced to an aggregate term of 25-50 years of incarceration. (Doc. No. 21 at 1.) At sentencing, the Commonwealth demonstrated that Petitioner was previously convicted in 1994 of raping a thirteen-year-old girl in Louisiana. (Id.; Doc. No. 17, Ex. K at 2.) As a result, in accordance with the provisions of 42 Pa. C.S.A. § 9718.2, Petitioner was sentenced to the minimum sentence of 25 years because he was previously convicted of certain sexual offenses. (Doc. No. 21 at 1-2.)

On January 26, 2010, Petitioner filed a direct appeal of his conviction from the Court of Common Pleas for Lancaster County to the Pennsylvania Superior Court. (Doc. No. 17, Ex. A at 5.) He argued that the trial court erred in:

(1) denying his motion for a mistrial based on vouching by the Commonwealth during closing; (2) permitting the Commonwealth to exclude for cause a juror who expressed a preference against sitting in judgment of another person; (3) excluding cross-examination questioning which would have elicited evidence of the victim's "bias, motive to fabricate, and lack of credibility;" (4) permitting certain hearsay testimony recounting statements by the victim; (5) refusing to instruct the jurors that they should evaluate the credibility of all witnesses regardless of whether they testified for the Commonwealth or for the defense; and (6) in sentencing, taking into account Donnelly's Louisiana rape conviction.

2

(Doc. No. 21 at 2.)  On November 1, 2010, the Superior Court affirmed Petitioner's conviction. (Id.)  On July 13, 2011, the Pennsylvania Supreme Court declined to review Petitioner's conviction.  (Id.)

On July 13, 2011, Petitioner filed for collateral review of his conviction under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, et seq.  (Id.)  The court appointed counsel for Petitioner.  Counsel then filed an amended petition.  (Id.)  The amended petition alleged seven new claims of ineffective assistance of counsel and one claim of prosecutorial misconduct.  (Id. at 2-3.)  On October 20, 2014, following procedural complications that resulted in delay, the PCRA court denied Petitioner's first PRCA petition, but granted him the right to appeal nunc pro tunc.  (Id. at 3.)  On December 15, 2014, Petitioner appealed the denial of his PCRA petition.  (Doc. No. 17, Ex. J at 7.)  On September 2, 2015, however, the Superior Court affirmed the PCRA court's decision.  (Doc. No. 21 at 4.)  At no point has Petitioner sought further review in the Pennsylvania Supreme Court.  (Id.)

On October 3, 2013, while Petitioner's first PCRA petition was pending, he filed a second PCRA petition.  (Id.)  In his second petition, Petitioner alleged that trial counsel had been ineffective in failing to:

> (1) object to pre-screening of the Children and Youth Agency's file prior to disclosing it; (2) object to the Commonwealth's argument as to LeBlanc's "foreknowledge" of the reason law enforcement visited him at his workplace; (3) object to the late disclosure of two pornographic videos subsequently entered as evidence; (4) object to the Commonwealth's leading questioning of the child victim; (5) use available impeachment evidence regarding the victim; (6) call the victim's mother as a witness; (7) call Larry Sollenberger as a witness; and (8) object to the trial court's apparently sympathetic statements to the child victim. He also alleged that trial counsel was ineffective in (9) expressing "ill will and contempt" toward LeBlanc and cooperating with the Commonwealth against his interests, and (10) advising LeBlanc not to testify at trial.

(Id. at 4-5.)  By way of joint stipulation of the parties, all claims were withdrawn except the fifth and seventh.  (Id. at 5.)  On March 8, 2016, Petitioner's second PCRA petition was dismissed as untimely.  (Id.)  The PCRA court further opined that Petitioner's claims lacked merit.  (Id.)

On October 9, 2014, while both of Petitioner's PCRA petitions were pending in state court, he filed a petition in this Court seeking habeas corpus relief.  (Id.)  His petition raised seven claims concerning evidentiary issues at trial and on appeal, police misconduct, judicial misconduct, attorney misconduct and the delay in filing of his second PCRA petition.  (Id. at 5-6.)

More specifically, in his first habeas corpus petition filed in this Court, Petitioner alleged the following claims:

(1) the delay in his PCRA appeal constituted inordinate delay;

(2) "The prosecution, its agents and defense and appellate counsel" destroyed and/or concealed exculpatory evidence;

(3) in obtaining an arrest warrant, and at a suppression hearing, law enforcement omitted and falsified exculpatory evidence and inconsistencies regarding witness interviews and Le Blanc's computer hard drive;

(4) Detective Savage, who testified as an expert in computers, testified falsely;

(5) "Prosecutorial Misconduct – perjury, suborning perjury, obstruction of justice, tampering with/fabricating/destroying evidence, vindictive prosecution" involving the District Attorney and Assistant District Attorney.

(6) judicial misconduct, with respect to the PCRA petition: the PCRA judge conspired with counsel to defeat Le Blanc's motion for reassignment of counsel, and the court reporter conspired to defeat his attempts to obtain transcripts of his hearing for his PCRA appeal; and

(7) "Attorney misconduct, perjury, ineffective assistance, conspiracy, obstruction of justice" with respect to trial counsel's failure to investigate the case.

(<u>Id.</u>)  On November 13, 2015, this Court determined that Petitioner's claims were unexhausted in Pennsylvania state court.  (<u>Id.</u> at 6.)  On November 13, 2015, Petitioner's habeas petition was denied without prejudice in the event Petitioner's claims became properly exhausted.  (<u>Id.</u>)

On March 3, 2016, Petitioner filed the present petition for habeas corpus relief.  (<u>Id.</u>)  In his second petition for habeas corpus relief, Petitioner raised ten claims regarding the ineffective assistance of counsel, law enforcement misconduct during the investigation, prosecutorial misconduct at trial, and evidentiary issues.  (<u>Id.</u> at 6-7.)  Petitioner's claims in the present Petition include:

> (1) Trial and all subsequent counsel were ineffective, and his confrontation rights were violated by the trial court, in that the court would not permit impeachment of the child victim with alleged instances of lying, and counsel refused to pursue relief on this ground;

> As part of the first claim, it is also alleged that the prosecution vouched for the credibility of the victim;

> (2) Law enforcement committed numerous instances of misconduct, generally related to falsifying the affidavit supporting the warrant for LeBlanc's arrest, and trial and PCRA counsel were ineffective in failing to act to prevent this, and/or pursuing relief on this ground;

> (3) False and unreliable documents were used at sentencing regarding LeBlanc's criminal history, specifically a conviction for armed robbery in 1996, resulting in "illegal sentencing, abuse of discretion, judicial misconduct, violation of due process, ineffective assistance of counsel";

> (4) Trial counsel was ineffective in failing to object to the false testimony of Detective Savage, the computer expert, and the trial court "violated due process" in dismissing the first PCRA petition, where this claim was raised;

> (5) "Prosecutorial misconduct, violation of compulsory process, confrontational clause, due process, and ineffective assistance [of counsel, presumably]" in connection with the failure to obtain the testimony of the victim's mother;

> (6) In his sixth claim, LeBlanc "incorporates the facts and references in Ground Two and layers this claim to avoid verbosity"; it sets out additional complaints of ineffective assistance of trial counsel in failing to prevent or remedy misconduct

by law enforcement, and also in failing to address weaknesses in the testimony of Mary Reedy-Holly, a prosecution witness;

(7) "Prosecutorial misconduct, perjury, violation of discovery, ineffective assistance, insufficiency of evidence" regarding documents obtained in discovery which were "suppressed" at trial;

(8) "Prosecutorial/police misconduct, violation of due process/discovery, compulsory process/confrontation, ineffective assistance, judicial misconduct" related to the prevention of LeBlanc from obtaining adequate discovery;

(9) Insufficiency of the evidence at trial, due to the "concealment" of the prosecutor's notes which prevented adequate impeachment of the child witness, and ineffective assistance of PCRA counsel in failing to pursue an insufficiency claim; and

(10) This claim sets forth numerous other alleged instances of ineffective assistance of trial counsel; appellate counsel (Mr. Karl); first PCRA counsel (Mr. Quinn) and second PCRA counsel (Mr. Pugh).

(Id. at 6-7.)   Two months later, Petitioner filed a subsequent document entitled "Petitioner's Amendment and Entry of Remainder of Habeas Claims."  (Id. at 7.)  In this document, Petitioner set forth eight additional claims.  Petitioner's new claims focused on ineffective assistance of counsel, judicial misconduct, prosecutorial misconduct, and evidentiary issues at trial.   (Id.) Specifically, Petitioner's additional claims are:

(11) The trial court engaged in misconduct in permitting the relevant Children and Youth filed [sic] be screened prior to discovery, and all counsel were ineffective in failing to permit the misconduct, or in failing to seek post-trial relief on the basis of this misconduct;

(12) "The prosecution ambushed the defense and poisoned the minds of the jury in his opening statement, implicating guilt through his own perjurous [sic] statement that when Detective Pappas arrived to interview [LeBlanc], he had foreknowledge of the interview and was aware of the allegations", and counsel was ineffective in failing to call employer as a witness to rebut this.  Additionally, the trial court committed misconduct in permitting "a defective petition to proceed, through which PCRA counsel could ambush the prosecutor . . . ."

(13) The prosecution committed misconduct in permitting the perjured testimony of the computer expert, and counsel and the trial court violated LeBlanc's rights by permitting this conduct and/or failing to seek relief on this basis;

(14) "Prosecutorial misconduct – leading, ambushing – violation of due process – trial error – structural breakdown – ineffective assistance" with respect to the prosecutor's comments in his opening statements, his leading questioning of the victim, leading questioning of expert witness Reed-Holly, obtaining perjured testimony from Detective Pappas; and ineffective assistance of both PCRA counsel in refusing to present these claims;

(15) Wrongful conduct by the judiciary, prosecution and his own attorneys in refusing to permit him a new appointed counsel during trial preparation, and in thirteen different respects at trial (by the trial judge), and by second PCRA counsel in failing to adequately address the misconduct and bias of the trial judge;

(16) Trial counsel was ineffective in ignoring and failing to act upon his instructions, for stating "he would not help a defendant who went behind his back and filed complaints with the state police against Detective Pappas and the alleged victim," and making slighting remarks about him to the prosecutor when he was informed that LeBlanc had in fact filed *pro se* motions and cases; the trial court wrongly refused to allow LeBlanc to develop this claim at his second PCRA hearing, and second PCRA counsel was ineffective in failing to pursue the claims;

(17) Trial counsel was ineffective in failing to argue that the computer pornography did not belong to him but to the victim's mother, and could have been viewed by the victim at any time, nor did he impeach the victim with his inconsistent statements and other irregularities, such as "counsel never censured [sic [the victim] on how at 13 years old he would know what a finger in his rectum felt like or did he have previous experience?";

(18) The cumulative errors resulted in the "incarceration of an innocent person," which "nefarious conduct was deliberately conspired from the onset in order that Detective Pappas might re-establish his self-destroyed career, and to prevent petitioner from prevailing in his civil action in this Court."

(Id. at 7-8.) Additionally, Petitioner's claims focused on the unreliability of the victim's testimony, and the several ways he claims he was prevented from demonstrating the victim's unreliability to the jury.  (Id. at 7.)

## III.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  Any party may file objections in response to the magistrate

judge's Report and Recommendation.  Id. at § 636(b)(1)(C).  Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions."  Id.   "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also 28 U.S.C. § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's Report and Recommendation.  Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections[.]"  Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D.Pa. Sept. 20, 2012).  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).

De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina College v. Russell, 499 U.S. 225, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper."  Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

## IV.   ANALYSIS

### A.  Petitioner's Habeas Petition Will Be Denied

In his Report and Recommendation, Magistrate Judge Hart concluded that Petitioner's only exhausted claim is without merit, that he failed to exhaust seventeen of his eighteen claims

in state court, and that his unexhausted claims are procedurally defaulted.  Because this Court agrees with Magistrate Judge Hart's conclusions, Petitioner's habeas petition will be denied.

### 1.  Petitioner's First Claim

Magistrate Judge Hart notes that Petitioner's first claim contains three subparts: (1) the exclusion of evidence of the victim's previous false accusations of sexual assault resulted in fundamental unfairness; (2) trial counsel was ineffective for failing to pursue relief based on the exclusion issue; and (3) the prosecution vouched for the victim's credibility in its closing argument.  (Doc. No. 21 at 6.)

### i.      Petitioner's Exclusion of Evidence Claim is Without Merit

Petitioner's only exhausted claim is without merit because the exclusion of the victim's previous false accusations of sexual assault did not result in fundamental unfairness.

When reviewing a habeas corpus claim, the court must apply the following standard from 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C § 2254(d).

Petitioner first argues that the trial court erred in prohibiting him from introducing evidence that the child victim made previous false accusations of sexual assault against his

biological father, mother, and stepmother.  (Doc. No. 21 at 6.)  The trial court excluded

Petitioner's evidence as irrelevant "because it sought to impeach [the victim's] credibility on

collateral matters."  (Id. at 15.)  On direct appeal, Petitioner raised his first claim as an abuse of

discretion by the trial court.  (Id.)  Petitioner argued that he should have been allowed to attack

the victim's credibility on past occasions under Pennsylvania Rules of Evidence 404(a)(2)(B)

and 405(b).[1]  (Id.)  The Superior Court found that the claim was waived because it was argued at

trial as an issue of the evidence's relevance.  The court found that Petitioner's counsel expressly

stated that he was not seeking to enter the evidence to impeach the victim's character for

---

[1] Pennsylvania Rules of Evidence 404(a)(2)(B) provides as follows:

    (a)  Character Evidence

*    *    *

    (2) Exceptions for a Defendant or Victim in a Criminal Case.  The following exceptions apply in a criminal case:

        (B) subject to limitations imposed by statute a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted the prosecutor may:

            (i) offer evidence to rebut it;

            (ii) offer evidence of the defendant's same trait.

Pennsylvania Rules of Evidence 405(b) provides as follows:

    (b)  By Specific Instances of Conduct.  Specific instances of conduct are not admissible to prove character or a trait of character, except:

    (1) In a civil case, when a person's character or a character trait is an essential element of a claim or defense, character may be proved by specific instances of conduct.

    (2) In a criminal case, when character or a character trait of an alleged victim is admissible under Pa.R.E. 404(a)(2)(B) the defendant may prove the character or character trait by specific instances of conduct.

truthfulness.  (Id.)  Petitioner argues that the exclusion of this evidence led to a constitutional violation of his right to confront witnesses against him.  (Id. at 6.)

A state evidentiary decision is cognizable in federal habeas corpus review only if it results in an error which deprives a defendant of fundamental fairness in his criminal trial. Reynolds v. Ellingsworth, 843 F.2d 712, 717 n.10 (3d Cir. 1988); Bisaccia v. Attorney General of New Jersey, 623 F.2d 302, 312 (3d Cir. 1980), cert. denied, 449 U.S. 1042 (1980).

Here, the trial court's ruling did not deprive Petitioner of fundamental fairness in his criminal trial.  The trial court denied the Petitioner's evidence to impeach the victim "because it sought to impeach [the victim's] credibility on collateral matters."  (Doc. No. 21 at 15.)  It is a well-established principle of Pennsylvania law that a witness cannot be impeached on "collateral matters."  Commonwealth v. Fisher, 290 A.2d 262, 267 (Pa. 1972) (citing McGoldrick v. Pennsylvania R.R. Co., 241 A.2d 90, 92 (1968)).  See also Commonwealth v. Petrillo, 19 A.2d 288 (Pa. 1941) (stating "the pivotal issues in a trial cannot be 'side-tracked' for determination of whether a witness lied in making a statement about something which has no relationship to the case on trial . . . .").

In Commonwealth v. Fisher, the Pennsylvania Supreme Court held that the prosecution could not impeach the defendant on the basis of whether he was beaten when he gave his statement to police because it distracted the jury from the pivotal issues in the case.  290 A.2d at 413.  Similarly, in federal court, a defendant is precluded from introducing evidence that seeks to impeach a witness's credibility wholly on collateral matters.[2] Fed. R. Evid.. 608(b).  Rule 608(b)

---

[2] Under Federal Rule of Evidence 608(b), evidence that seeks to impeach a witness by specific instances of conduct is precluded from admission to avoid mini-trials on "wholly collateral matters which tend to distract and confuse the jury."  Carter v. Hewitt, 617 F.2d 961, 971 (3d Cir. 1980) (citing United States v. Simmons, 444 F. Supp. 500, 507 (E.D. Pa. 1978)); FED. R. EVID. 608(b).

has been upheld as constitutional, and does not violate a defendant's confrontation clause rights. See Carter, 617 F.2d at 971. Therefore, Petitioner's claim is without merit because the state court's evidentiary ruling relied on a principle that is not a violation of Petitioner's right to confront the witnesses against him.

Accordingly, Petitioner's exhausted first claim is without merit because the exclusion of the victim's previous false accusations of sexual assault did not result in fundamental unfairness.

### ii.     Petitioner Failed to Exhaust his Claim of Ineffectiveness of Counsel for Failing to Pursue Relief Based on the Exclusion of Evidence

Petitioner's claim that trial counsel was ineffective for failing to challenge the exclusion of the evidence pertaining to the victim's previous false accusations is unexhausted.

Under 28 U.S.C. § 2254(b)(1)(A), a petitioner must exhaust all available state court remedies before a federal district court may review his claims. See Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997) ("28 U.S.C. § 2254 imposes a duty on the courts to examine the exhaustion issue and to reject a petition if it raises unexhausted claims."). This exhaustion requirement "rests upon the principles of comity and judicial economy . . . [and] provides state courts with an initial opportunity to consider and correct alleged violations prisoners' rights without disruption from the federal courts." Hankins v. Fulcomer, 941 F.2d 246, 249 (3d Cir. 1991). Thus, a petitioner "must afford the state system 'the opportunity to resolve the federal constitutional issues before he goes to the federal court for habeas relief.'" Rainey v. Varner, 603 F.3d 189, 198 (3d Cir. 2010) (quoting Zicarelli v. Gray, 543 F.2d 466, 472 (3d Cir. 1976)). The Third Circuit has found that an appeal to the Pennsylvania Superior Court is sufficient to satisfy the exhaustion requirement. Whitney v. Horn, 280 F.3d 240, 250 n.10 (3d Cir. 2002).

Here, as Magistrate Judge Hart set forth in his Report and Recommendation, Petitioner failed to previously raise his ineffective assistance of counsel claim in Pennsylvania state court, either in direct or collateral appeal. (Doc. No. 21 at 16.) Therefore, Petitioner's ineffective assistance of counsel claim pertaining to trial counsel's failure to challenge the exclusion of impeachment evidence is unexhausted and cannot be considered by this Court.

### iii. Petitioner's Claim that the Prosecution Vouched for the Witness is Without Merit

Petitioner's claim that the prosecution vouched for the victim in its closing argument is without merit because the trial court cured any potential prejudice through a subsequent jury instruction.

Petitioner presented his vouching claim to the Pennsylvania Court in his direct appeal. (Doc. No. 21 at 17.) Petitioner maintained that the prosecutor improperly stated in closing that the victim was in a category of witnesses who should be found credible because he was only slightly inconsistent in his testimony. (Id.) The Superior Court found that the prosecutor's statement was not an express assurance of the victim's credibility. (Id.) Furthermore, the Superior Court determined that any prejudice was cured when the trial court instructed the jury as follows:

> You heard in closing arguments a discussion or outline of the types of witnesses that are in these types of cases. You will be instructed more fully as to what rules apply to the credibility of witnesses when I give my closing instructions, but for the purposes of right now, you may consider only these witnesses that testified here in court, and you only [i.e., you alone] consider those witnesses' credibility.

(Id.)

On federal habeas review, "it is not province of [a] federal habeas court to re-examine state court determination[s] on state law questions." Estelle v. Mcguire, 502 U.S. 62, 67-68

(1991).  A federal court is limited to deciding whether the conviction violated the Constitution, law or treaties of the United States.  Id. (citing 28 U.S.C. § 2241).

Here, Pennsylvania law presumes that juries follow the court's instructions. Commonwealth v. Hawkins, 701 A.2d 492, 503 (Pa. 1997).  As stated above, the Superior Court determined that the prosecutor's statement was not an assurance of the victim's credibility, and the trial court properly remedied any potential prejudice under this assumption.  (Doc. No. 21 at 17.)   As Magistrate Judge Hart determined, Petitioner has failed to show why the Superior Court's determination on a state issue should be disregarded.  (Id.)  Therefore, Petitioner's claim that the prosecution vouched for the victim in its closing argument is without merit.

### 2.   Petitioner's Remaining Seventeen Claims are Unexhausted

Petitioner's remaining seventeen claims remain unexhausted in state court.  As previously stated, based on the principles of comity and judicial economy, a petitioner must exhaust available state court remedies before a federal district court may review his claims.  See Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997) (finding that, "28 U.S.C. § 2254 imposes a duty on the courts to examine the exhaustion issue and to reject a petition if it raises unexhausted claims.").  An appeal to the Pennsylvania Superior Court is sufficient to satisfy the exhaustion requirement.  Whitney v. Horn, 280 F.3d 240, 250 n.10 (3d Cir. 2002).

As Magistrate Judge Hart determined, Petitioner's habeas petition raises seventeen unexhausted claims.  Eight of Petitioner's claims, Petitioner's third, sixth, ninth, tenth, thirteenth, fifteenth, sixteenth, and eighteenth claims, were not raised in any previous Pennsylvania proceeding.[3]   (Doc. No. 21 at 9.)   Petitioner's second, fifth, seventh, eighth, and seventeenth

---

[3]  In the prior mentioned claims, Petitioner seeks relief from alleged ineffective assistance of counsel in trial and post-conviction appeals; the use of "false and unreliable" documents at sentencing; the insufficiency of evidence at trial because the prosecution concealed its "notes"

claims were raised in state court but were not exhausted through appeal.[4]  (Id.)  Next, Petitioner's

fourth, eleventh and fourteenth claims were included in his second PCRA petition, but remain

unexhausted because he dropped all three claims by stipulation.[5]  (Id.)  Finally, Petitioner's

twelfth claim, while raised in his second PCRA petition, was not addressed by the state trial court

because Petitioner's second PCRA petition was denied as untimely.[6]  Accordingly, Petitioner's

remaining seventeen claims are unexhausted, and the Court cannot consider them.[7]

### 3.   Petitioner's Unexhausted Claims are Procedurally Defaulted

The Court is further prevented from addressing Petitioner's claims because all

unexhausted claims are procedurally defaulted.  A state prisoner's federal habeas claim becomes

---

from Petitioner; and the trial court allowed "perjured" testimony to be presented to the jury. (See Doc. No. 21 at 6-8.)

[4] In the previously listed claims, Petitioner seeks relief from alleged law enforcement misconduct during the course of the investigation; prosecutorial misconduct resulting in violations of Petitioner's constitutional rights; the ineffective assistance of trial counsel regarding evidence suppressed at trial,  judicial misconduct resulting in the failure of Petitioner to obtain adequate discovery, and the ineffectiveness of trial counsel for failing to ask the victim "how at 13 years old he would know what a finger in his rectum felt like or did he have previous experience?" (See Doc. No. 21 at 6-8.)

[5] In the prior mentioned claims, Petitioner seeks relief from the failure of trial counsel to object to the "false testimony of detective Savage;" the PCRA court violating Petitioner's due process rights by dismissing his first PCRA petition; the failure of the trial court in allowing "the relevant Children and Youth filed [sic] to be screened prior to discovery; the ineffective assistance of all counsel in failing to object to the pre-screening of the youth folder; the prosecutorial misconduct by leading and ambushing the defense, as well as the ineffective assistance of PCRA counsel from pursuing relief on the grounds of prosecutorial misconduct.

[6] Petitioner's twelfth claim seeks relief on the grounds that the prosecution "ambushed the defense and poisoned the minds of the jury" through its opening statement implicating the Petitioner's guilt, and the ineffective assistance of counsel for failing to call Petitioner's employer as a witness.

[7] In total, Petitioner's unexhausted claims include the second sub-part of his first claim, as well as his second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeen, and eighteenth claims.

procedurally defaulted if the prisoner fails to exhaust the claim in state court and state procedures prohibit the petitioner from later presenting the claim in state court.  Collins v. Secretary of Pennsylvania Dept. of Corrections, 742 F.3d 528, 542 (3d Cir. 2014).

Here, all of Petitioner's unexhausted claims are procedurally defaulted.  As Magistrate Judge Hart found, Petitioner's second PCRA petition was dismissed as untimely as it was filed more than five years after the Petitioner's conviction became final.  (Doc. No. 21 at 5.)  It follows that any subsequent PCRA petitions will also be untimely.  Consequently, Petitioner cannot raise his unexhausted claims in state court due to the procedural bar.  Therefore, Petitioner's unexhausted claims are procedurally defaulted.

### 4.  Petitioner is Not Entitled to Relief From Procedural Default

Procedural default is not a complete bar to federal habeas corpus review.  A Petitioner may survive procedural default, if the petitioner demonstrates either: (a) cause for the default and actual prejudice arising from the alleged violation of federal law; or (b) that failure to consider his claims will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Petitioner has failed to allege actual prejudice arising from the alleged violation or an actual miscarriage of justice.  As such, Petitioner fails to satisfy either exception to procedural default, therefore he is not entitled to relief.

### i.  Petitioner Has Not Demonstrated Cause and Prejudice; Therefore the Martinez v. Ryan Exception Does Not Apply

Initially, as Magistrate Judge Hart properly determined, Petitioner made no specific argument regarding cause for his procedural default that resulted in prejudice.  (Doc. No. 21 at 11.)  However, Petitioner's claims are largely based on ineffective assistance of counsel, which can provide a basis for cause.  See Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012).  Therefore,

the Court must determine if Petitioner's ineffective assistance of counsel claims provide relief from procedural default.

In limited circumstances, ineffective assistance of PCRA counsel can excuse procedural default.  Id.  However, an attorney's errors in post-conviction proceedings do not qualify as cause for procedural default.  Coleman v. Thompson, 501 U.S. 722, 753 (1992).  Procedural default may only be excused if the ineffective assistance claim relates to the failure of PCRA counsel to raise a claim of ineffective assistance of trial counsel which could not have been raised on appeal.  Martinez, 132 S. Ct. at 1320-21.  This narrow exception does not establish a constitutional right to effective PCRA counsel, nor does it apply to attorney errors in proceedings other than the first collateral review.  Id. at 1315, 1320.  This includes ineffective counsel claims regarding counsel from a petitioner's initial collateral review and counsel for subsequent collateral review.  Id. at 1320.  See Moore v. DiGuglielmo, 489 F. App'x. 618, 627 n.5 (3d Cir. 2012).  Additionally, procedural default is not excused if the claim of ineffective assistance of trial counsel is insubstantial.  Therefore, the Martinez exception can only apply where Petitioner alleged that counsel in his first PCRA petition should have alleged the ineffective assistance of trial counsel.  This includes Petitioner's second, third, fifth, seventh, eighth, and thirteenth claims.[8]  (Doc. No. 21 at 12.)

---

[8]  Within the previously stated claims, Petitioner seeks relief from the failure of trial counsel to prevent law enforcement misconduct during the investigation; object to "false" documents used at sentencing; obtain the testimony of the victim's mother; object to documents suppressed at trial; object to the prosecution to presenting "the perjured testimony of the computer expert;" and obtain adequate discovery for Petitioner.   (Doc. No. 21 at 7.)

Magistrate Judge Hart's Report and Recommendation includes Petitioner's fifteenth claim in this section.  Petitioner's fifteenth claim asserts that his second PCRA counsel was ineffective for failing to address the "misconduct and bias" of the trial judge.  (Doc. No. 21 at 8.) However, this claim does not fit in the Martinez exception as the Martinez exception only

Petitioner's second, third, fifth, seventh, and eighth claims are not entitled to relief from procedural default because they relate to the ineffectiveness of his first PCRA counsel to attach supporting documents to his ineffective assistance of trial counsel claims.[9]  Petitioner concedes his first PCRA counsel raised these ineffective assistance of trial counsel claims in his first PCRA petition.  (Id.)  Petitioner merely argues that first PCRA counsel was ineffective for failing to support his claim.  (Id.)

As noted above, the <u>Martinez</u> exception is only implicated where first PCRA counsel failed to allege the ineffective assistance of trial counsel.  Here, Petitioner's first PCRA raised petitioner's ineffective assistance of trial counsel claims.  (Doc. No. 21 at 2-3.)  Petitioner cannot succeed simply because his first PCRA counsel did not raise them successfully.  The <u>Martinez</u> court states that there is no constitutional right to effective PCRA counsel.  <u>Martinez</u>, 132 S. Ct. at 1315.  Thus, Petitioner's second, third, fifth, seventh, and eighth claims are not entitled to relief from procedural default because they relate to the ineffectiveness of his first PCRA counsel to attach supporting documents to his ineffective assistance of trial counsel claims.[10]

---

applies to claims relating to the ineffective assistance of the first PCRA counsel.  <u>Martinez</u>, 132 S. Ct. at 1315.  Therefore, it will not be considered here.

[9]  Specifically, Petitioner seeks relief from the failure of trial counsel to prevent law enforcement misconduct during the investigation; object to "false" documents used at sentencing; obtain the testimony of the victim's mother; object to documents suppressed at trial; and obtain adequate discovery for Petitioner.  (Doc. No. 21 at 6-7.)

[10]  As previously stated, Petitioner seeks relief from the failure of trial counsel to prevent law enforcement misconduct during the investigation; object to "false" documents used at sentencing; obtain the testimony of the victim's mother; object to documents suppressed at trial; and obtain adequate discovery for Petitioner.  (Doc. No. 21 at 6-7.)

Next, Petitioner's thirteenth claim is not entitled to relief from procedural default because it involves the strategic decisions of PCRA counsel.[11]  Courts are "highly deferential" to previous counsel's strategic decisions, and are not to engage in hindsight analysis of trial counsel's actions.  Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002).  Here, Petitioner argues that his first PCRA counsel was ineffective for failing to raise an effective assistance of trial counsel claim for failing to object to the allegedly perjured testimony of the computer expert.  (Doc. No. 21 at 14.)  Petitioner concedes that his first PCRA counsel advised him that these claims were frivolous and without merit.  (Id.)  Magistrate Judge Hart properly notes that where counsel believes that a claim is frivolous and meritless, it is a strategic decision not to bring the claim. See Strickland v. Washington, 466 U.S. 668, 690-91 (1984) (stating that courts are to afford great deference to counsel's strategic decisions).  Furthermore, Petitioner sets forth no evidence on which his claim may be substantiated.  Consequently, Petitioner's thirteenth claim is not entitled to relief from procedural default because it involves the strategic decisions of PCRA counsel.

Accordingly, Petitioner has not made a proper demonstration of cause and a resulting prejudice to be excused from procedural default.[12]

### ii. Petitioner Has Not Established a Fundamental Miscarriage of Justice

Petitioner fails to argue or satisfy the requirements to establish a fundamental miscarriage of justice.

---

[11] Petitioner's thirteenth claim states that trial counsel allegedly violated his rights by permitting and failing to object to the prosecution to presenting "the perjured testimony of the computer expert."  (Doc. No. 21 at 7.)

[12] The Court does not reach the question of whether Petitioner can show actual prejudice because Petitioner failed to demonstrate any cause for prejudice.

To establish a fundamental miscarriage of justice, the petitioner must demonstrate actual innocence.  Schlup v. Delo, 513 U.S. 298 (1995).  This requires that a petitioner show "new reliable evidence that was not presented at trial," and that it is more likely than not that no reasonable jury would have found him guilty beyond a reasonable doubt.  Id. at 324, 327.  Petitioner's only argument pertaining to actual innocence is a statement in his eighteenth claim where he maintains that the other alleged habeas claims resulted in the incarceration of an "innocent person."  (Doc. No. 21 at 8.)  This fails the "actual innocence" standard as Petitioner fails to assert any specific argument pertaining to actual innocence.  (See generally Doc. No. 1.)  Additionally, Petitioner's claims do not include new evidence that was not presented at trial, but rather Petitioner's claims assert the failure of existing evidence to demonstrate his actual innocence at trial.  (Doc. No. 21 at 6-8.)  This does not satisfy Petitioner's burden to establish actual innocence.

Accordingly, Petitioner is not entitled to relief from procedural default on the grounds of either cause, prejudice, or a miscarriage of justice.

### B.  Petitioner's Objections to Magistrate Judge Hart's Report and Recommendation are Without Merit

On August 17, 2016, Petitioner filed Objections to [the] Report and Recommendation.  One month later, Petitioner filed an Amplification and Clarification of [his] Objections.  Petitioner filed nineteen pages of objections to the Report and Recommendation.  However, Petitioner's objections can be summed up in two principle arguments: (1) Magistrate Judge Hart did not read the facts in Petitioner's favor, and (2) he was prevented from exhausting his claims based on his previous counsel's strategic decisions.  (See generally Doc. Nos. 25, 27.)

First, Petitioner's objections to how Magistrate Judge Hart characterizes the facts underlying his petition are without merit because Petitioner has not shown, through clear and

convincing evidence, that the state courts' factual determinations were incorrect.  28 U.S.C. § 2254(e)(1); Dellavecchia v. Sec'y Pa. Dept. of Corrs., 819 F.3d 682, 692 (3d Cir. 2016); Eley v. Erickson, 712 F.3d 837, 847 (3d Cir. 2013).

Federal habeas corpus review requires that the habeas court give deference to the factual determinations made by the state court.  28 U.S.C. § 2254(e)(1).  The state court's factual determinations are presumed correct, and the petitioner bears the burden of rebutting the presumption through clear and convincing evidence.  Id.; Dellavecchia, 819 F.3d 682; Eley, 712 F.3d at 847.    In Eley v. Erickson, the Third Circuit stated "that [an] alternative interpretation 'does not—by itself—rise to the level of clear and convincing evidence,' necessary . . .  to rebut the presumptive correctness . . . ."  712 F.3d at 853.    Here, Petitioner asks the Court to read the facts as he sets them forth, requesting that alternative factual inferences be drawn in his favor. (Doc. No. 27 at 1.)  As stated in Eley, this assertion, without further evidence, does not rise to the level of clear and convincing evidence to rebut the presumption against Petitioner.    Id. Furthermore, after reviewing the record, the Court finds that Magistrate Judge Hart did not mischaracterize or improperly interpret the facts set forth.  Accordingly, the Petitioner is not entitled to the favorable view that he advocates for in his objections.

Second, Petitioner's objections that he was prevented from exhausting his claims based on his previous counsel's strategic decisions are without merit.  As stated above, the Court is to be "highly deferential" to previous counsel's strategic decisions and should not to engage in a hindsight analysis of trial counsel's actions.  Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002).  As properly determined by Magistrate Judge Hart, Petitioner's objections merely ask the Court to engage in a hindsight analysis of the decision Petitioner's counsel made strategic and tactical decisions regarding which claims to bring in each state court proceeding.  (Doc. No. 21

at 12.)  The Court will not second guess defense counsel's decisions on which claims it should have brought.

Accordingly, the Petitioner's objections to Magistrate Judge Hart's Report and Recommendation are without merit.

## V.      CONCLUSION

For the foregoing reasons, the Court will adopt Magistrate Judge Jacob P. Hart's Report and Recommendation and will dismiss Petitioner's Habeas Petition.   A Certificate of Appealability will not be issued based on the analysis contained in the Magistrate Judge Hart's Report and Recommendation, as approved and adopted by this Court, that a reasonable jurist could not conclude that the Court is incorrect in denying and dismissing the Writ of Habeas Corpus.  An appropriate Order follows.